# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| **LEAVERTA PAYNE,** | CASE NO. 20-BK-18558 |
| DEBTORS. | HON. |
| **PATRICK S. LAYNG,**<br>**UNITED STATES TRUSTEE,** | |
| PLAINTIFF, | ADV. NO. _____ |
| V. | |
| **GERACI LAW L.L.C.**, STEVEN S. CAMP, RYAN S. FOJO, JUAN M. VILLALPANDO, CECIL D. SCRUGGS, AND WILLIAM ALEXANDER WILSON, | |
| DEFENDANTS. | |

## **COMPLAINT**

Patrick S. Layng, the United States Trustee for the Northern District of Illinois (the "*U.S. Trustee*" or the "*Plaintiff*"), by and through his attorneys, Adam G. Brief and David Paul Holtkamp, hereby requests that pursuant to 11 U.S.C. §§ 105, 329(b), 362, and 524, this Court enter judgment against Geraci Law, L.L.C. ("*Geraci Law*"), Steven S. Camp, Jr. ("*Camp*"), Ryan S. Fojo ("*Fojo*"), Juan M. Villalpando ("*Villalpando*"), Cecil D. Scruggs ("*Scruggs*"), and William Alexander Wilson ("*Wilson*") (collectively, the "*Defendants*") ordering them to disgorge all fees received

— 1 —

after the filing of the petition in the chapter 7 cases identified in this Complaint, and any other case filed in the past 2 years in which they employed the payment scheme described herein. The U.S. Trustee additionally requests that this Court enter judgment enjoining the Defendants from employing the payment scheme in the future. As and for his Complaint, the U.S. Trustee respectfully states as follows:

## SUMMARY OF COMPLAINT

1.      Geraci Law employs a payment scheme in chapter 7 cases that violates the automatic stay, the discharge injunction, and the strict reaffirmation agreement requirements found in the Code.

2.      Geraci Law's payment scheme is structured so that its clients retain it only once — prepetition. Under the prepetition retention agreement, Geraci Law agrees to represent the client until the end of the chapter 7 case for some amount, around $2,500. However, only a portion of that, usually about half, has to be paid prepetition to secure Geraci Law's legal services through case closing, *i.e.*, for all customary pre and post-petition services. The prepetition retention agreement appears to recognize that the remaining balance as of the petition date will not have to be paid because it is a dischargeable prepetition debt.

3.      However, the prepetition retention agreement provides that Geraci Law will seek a post-petition agreement from its clients that by its express terms "***is not a new contract for services***" and thus not a post-petition retention agreement. Instead the post-petition agreement is an agreement "in order to create [an] obligation to pay [Geraci Law]" for "services [Geraci Law] agreed in [the prepetition] retainer to perform through case closing[.]" Therefore, the entire agreement, that is

the entire amount owed and the services to be provided, is struck prepetition. The post-petition agreement is merely an agreement to pay the remaining balance on a prepetition contract, in short, a prepetition debt.

4.    The Seventh Circuit in *Bethea v. Robert J. Adams Associates,* 352 F.3d 1125 (7th Cir. 2003) and the bankruptcy court in *In re Griffin*, 313 B.R. 757, 760 (Bankr. N.D. Ill. 2004) were clear that this single prepetition engagement approach is impermissible. The automatic stay prohibits collection of the remaining balance from the prepetition retention agreement during the case and the discharge injunction bars it after the discharge is entered.

5.    Geraci Law asserts its practices are valid because 11 U.S.C. § 524(f) allows debtors to voluntarily make post-petition payments and because it is not withholding any post-petition services to coerce its clients into signing its post-petition payment agreements. But Geraci Law conflates voluntary payments with reaffirmation agreements. When debtors affirmatively, on their own volition, and without prompting, send post-petition payments to a creditor, those are voluntary payments contemplated by 11 U.S.C. § 524(f). However, when a creditor requests or prompts the debtor to execute a post-petition agreement that allows that creditor to electronically reach into the debtor's bank account each month (or week) like a garnishment to recover the balance from a prepetition contract, that is a reaffirmation agreement. Geraci Law's post-petition agreements are disguised reaffirmation agreements not approved by the Court and not authorized under § 524(f).

6.      Worse still, these disguised reaffirmation agreements put Geraci Law in direct conflict with its clients and therefore Geraci Law cannot represent its clients in negotiating these agreements against itself. This leaves its clients unrepresented in these negotiations. Pursuant to 11 U.S.C. § 524(d) the Court must hold a hearing when an unrepresented individual would like to reaffirm a debt to ensure the debtor knows that reaffirmation is not required and to ensure that there is no overreaching by the creditor. But Geraci Law's practice skirts this requirement.

7.      It also appears that in most of the cases in which Geraci Law obtains a post-petition agreement, Schedule J reflects that the debtor does not have the funds available each month to support the amounts Geraci Law is electronically withdrawing. Geraci Law, therefore, would not be able to assert that these agreements would not be an undue hardship under 11 U.S.C. § 524(c)(3).

8.      Finally, because Geraci Law has structured its payment scheme so that no additional services are provided in exchange for the post-petition agreements and the payments thereunder, no valuable services support those payments and the agreements are unenforceable. Under 11 U.S.C. § 362(b), the agreements should be cancelled, and all payments disgorged.

9.      Geraci Law has made it very clear that its post-petition agreements are not post-petition contracts to "hire and pay" it for post-petition work as contemplated by *Bethea*. Instead, Geraci Law agrees under its prepetition retention agreements to represent its clients for a flat fee for the entire case (pre and post-petition) and the post-petition agreement is merely an agreement to extract the unpaid balance due

under the prepetition retention agreement. Worse still, Geraci Law extracts those post-petition payments by ACH automatic debits from its clients' bank accounts even though it knows those clients often don't have the disposable income to support the payments. Judgment should be entered in favor of the U.S. Trustee on all Counts.

## JURISDICTION AND VENUE

10.   This Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. § 157 and IOP 15(a) and LR 40.3.1 of the United States District Court for the Northern District of Illinois.

11.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and in the event this is a non-core proceeding, the Plaintiff consents to the entry of a final order by the bankruptcy court.

12.   Venue of this proceeding is proper in this Court pursuant to 28 U.S.C. § 1409(a).

13.   The Plaintiff files this Complaint pursuant to 11 U.S.C. §§ 105, 329, 362, and 524 and Fed. R. Bankr. P. 7001 and 7065.

14.   The Plaintiff has standing to bring this Complaint and ask for the relief requested herein pursuant to 11 U.S.C. §§ 105, 307, 329, 362, and 524.

15.   Section 307 of the Bankruptcy Code provides: "The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title…" 11 U.S.C. § 307.

16.   11 U.S.C. § 105(a) provides this Court with the power to enter orders and judgments necessary or appropriate to carry out the provisions of the Bankruptcy

Code. Additionally, this Court has the inherent power to regulate the practice of attorneys that appear before it.

17.   11 U.S.C. § 329 and Fed. R. Bankr. P. 2017 provide the U.S. Trustee with standing to seek disgorgement of fees paid to an attorney before or after the commencement of a bankruptcy case.

18.   The Defendants and the rights to relief asserted against them are joined in this Complaint under Fed. R. Civ. P. 18(a) and 20(a)(2), made applicable to this proceeding by Fed. R. Bankr. P. 7018 and 7020.

## THE PARTIES

### I.   The Plaintiff

#### A. The U.S. Trustee.

19.   Plaintiff, Patrick S. Layng, is the duly appointed United States Trustee for the Northern District of Illinois and is charged with supervising the administration of bankruptcy cases pursuant to 28 U.S.C. § 586. The U.S. Trustee maintains his principal place of business at 219 S. Dearborn St., Room 873, Chicago, Illinois, within this district.

### II.   The Defendants

#### A. Geraci Law L.L.C.

20.   Geraci Law is an Illinois limited liability corporation established to practice law. Its primary place of business and principal office is at 55 E. Monroe St., Ste. 3400, Chicago, Illinois 60603.

21.   Peter Francis Geraci ("*Mr. Geraci*") is the sole manager of Geraci Law and its registered agent.

— 6 —

22.   Mr. Geraci is an attorney licensed to practice law by the Supreme Court of the State of Illinois.

23.   Geraci Law practices primarily in the area of consumer bankruptcy in the Northern District of Illinois. It is a high-volume filer, filing thousands of bankruptcy cases in the Northern District of Illinois each year.

24.   Pursuant to this Court's Local Rule 2090-5(A)(3) firms are prohibited from appearing before this Court. Therefore, Geraci Law acts through the other Defendants to employ the payment scheme detailed in this Complaint in cases filed before this Court.

25.   On information and belief, all of the Defendants, other than Geraci Law, are attorneys that work for Geraci Law. Geraci Law collects all of the fees and expenses from the clients, including the debtors identified in this Complaint.

26.   Geraci Law is a debt relief agency as defined by the Bankruptcy Code under 11 U.S.C. § 101(12A).

### B. Steven S. Camp, Jr.

27.   Camp is an Illinois licensed attorney residing within this district and with his principal place of business within this district.

28.   Camp is employed by Geraci Law as an attorney.

29.   Camp is the attorney of record in the underlying case of *In re Payne* (20-18558).

### C. Ryan S. Fojo.

30.   Fojo is an Illinois licensed attorney residing within this district and with his principal place of business within this district.

31.   Fojo is employed by Geraci Law as an attorney.

32.   Fojo is the attorney of record in the underlying case of *In re Wheeler* (20-17560).

### D. Juan M. Villalpando.

33.   Villalpando is an Illinois licensed attorney residing within this district and with his principal place of business within this district.

34.   Villalpando is employed by Geraci Law as an attorney.

35.   Villalpando is the attorney of record in the underlying cases of *In re Groce* (20-19354) and *In re Ridgner* (20-19431).

### E. Cecil D. Scruggs.

36.   Scruggs is an Illinois licensed attorney residing within this district and with his principal place of business within this district.

37.   Scruggs is employed by Geraci Law as an attorney.

38.   Scruggs is the attorney of record in the underlying case of *In re Austin* (20-19047).

### F. William Alexander Wilson.

39.   Wilson is an Illinois licensed attorney residing within this district and with his principal place of business within this district.

40.   Wilson is employed by Geraci Law as a supervising or managing attorney.

41.   Wilson is the attorney of record in the underlying case *In re Brust* (20-12304).

## FACTS RELEVANT TO ALL COUNTS

### I.   The Defendants' Payment Scheme.

42.   Geraci Law does not bifurcate its legal engagements with its chapter 7 clients between prepetition and post-petition services as suggested by the Circuit Court in *Bethea v. Robert J. Adams Associates,* 352 F.3d 1125, 1129 (7th Cir. 2003) ("Those who cannot prepay in full can tender a smaller retainer for prepetition work and *later hire and pay counsel once the proceeding begins*[.]") (emphasis added). It has instead decided to have only a single prepetition retainer agreement and then a post-petition agreement, purportedly under 11 U.S.C. § 524(f), for clients to "voluntarily pay" the remaining balance from the prepetition agreement.

43.   In short, the sole purpose of Geraci Law's post-petition agreement is to collect the remaining balance from the prepetition retention agreement. No additional services are provided by Geraci Law in exchange for that post-petition agreement or the payments thereunder. The post-petition agreement is very clear that it is "not a new contract for services," but instead is an agreement to extract payments only.

### II.   The Identified Debtors

44.   On information and belief, the payment scheme detailed in this Complaint is employed by Geraci Law in all or substantially all of the chapter 7 cases where the debtor declines to pay the entire flat fee prior to filing the petition.

45.   The debtors identified in this Complaint are only a few of the hundreds, and possibly thousands of clients that have been harmed by Geraci Law's payment scheme in the past 2 years. Thus, the identified debtors are both the actual victims and are also demonstrative of a much larger group.

### A. *Leaverta Payne* (20-18558).

46.   Leaverta Payne ("*Payne*") filed a petition under chapter 7 of title 11 of the

United States Code in the U. S. Bankruptcy Court for the Northern District of Illinois

on October 12, 2020, thereby initiating the case *In re Payne,* (20-18558).

47.   On February 3, 2020, Payne executed a retainer agreement for Geraci Law

to represent her "in a Chapter 7 Bankruptcy until case closing" (*i.e.* to perform all

customary pre and post-petition work).

48.   A true and correct copy of that prepetition retainer agreement is attached as

**Exhibit A**.

49.   Under the prepetition retainer agreement, the fee for the entire case

(including the filing fee) was $2,230. The retainer agreement required Payne to pay

$900 before the petition was filed leaving $1,330 due post-petition.

50.   The prepetition retainer agreement provides that "[a] separate agreement

may be required in order to create any obligation to pay us for services and costs after

filing… The Bankruptcy Code allows you to pay us voluntarily [under § 524(f)], but

we prefer a written agreement so there are no misunderstandings."

51.   It appears that prior to filing the petition Payne paid $975, instead of the

$900 required to retain Geraci Law for the entire case.

52.   After the petition was filed, Payne executed a post-petition agreement which

expressly provides that it "is not a new contract for services" but is instead an

agreement to pay for "all post-petition services we agreed in your [prepetition]

retainer to perform through case closing[.]" It further provides that the "[b]alance to

voluntarily agree to pay for the rest of the work" is the balance unpaid under the prepetition retainer agreement.

53.   A true and correct copy of that post-petition agreement is attached as **Exhibit B**.

54.   Along with the post-petition agreement Geraci Law filed a supplemental 2016(b) statement providing that the $75 above the $900 required to be paid prepetition to retain Geraci Law for the entire case was for "Post Case-Filing Work Pre-Paid."

55.   The post-petition agreement then authorizes Geraci Law to make ACH auto-debits from Payne's bank account in the amount of $75 on the 3rd and 18th of each month ($150 per month total) until the balance from the prepetition retainer agreement is paid off.

56.   Payne is a below-median income debtor and her Schedule I reflects that she earns under $25,000 per year and her Statement of Financial Affairs reflects that she has not earned over $25,000 in the past two years.

57.   Payne's Schedule J reflects that her monthly net income after expenses is *negative* $750 per month.

58.   Therefore, Payne has no excess income and the $150 per month that Geraci Law is electronically withdrawing from her bank account imposes an undue burden.

59.   Payne's Schedule A/B reflects no real estate or other assets of any significant value.

60.   The automatic stay was imposed as a matter of law on the petition date and remains in effect.

61.   This case is currently pending.

### B. *Michael Richard Wheeler* (20-17560)

62.   Michael Richard Wheeler ("*Wheeler*") filed a petition under chapter 7 of title 11 of the United States Code in the U. S. Bankruptcy Court for the Northern District of Illinois on September 24, 2020, thereby initiating the case *In re Wheeler,* (20-17560).

63.   On September 3, 2020, Wheeler executed a retainer agreement for Geraci Law to represent him "in a Chapter 7 Bankruptcy until case closing" (*i.e.* to perform all customary pre and post-petition work).

64.   A true and correct copy of that prepetition retainer agreement is attached as **Exhibit C**.

65.   Under the prepetition retainer agreement, the fee for the entire case (including the filing fee) was $2,335. The retainer agreement required Wheeler to pay $1,000 before the petition was filed leaving $1,335 due post-petition.

66.   The prepetition retainer agreement provides that "[a] separate agreement may be required in order to create any obligation to pay us for services and costs after filing… The Bankruptcy Code allows you to pay us voluntarily [under § 524(f)], but we prefer a written agreement so there are no misunderstandings."

67.   It appears that prior to filing the petition Wheeler paid $1,335, instead of the $1,000 required to retain Geraci Law for the entire case.

68. The day after the petition was filed, Wheeler executed a post-petition agreement which expressly provides that it "is not a new contract for services" but is instead an agreement to pay for "all post-petition services we agreed in your [prepetition] retainer to perform through case closing[.]" It further provides that the "[b]alance to voluntarily agree to pay for the rest of the work" is the balance unpaid under the prepetition retainer agreement.

69. A true and correct copy of that post-petition agreement is attached as **Exhibit D**.

70. Along with the post-petition agreement Geraci Law filed a supplemental 2016(b) statement providing that the $335 above the $1,000 required to be paid prepetition to retain Geraci Law for the entire case was for "Post Case-Filing Work Pre-Paid."

71. The post-petition agreement then authorizes Geraci Law to make ACH auto-debits from Wheeler's bank account in the amount of $200 on the 23rd of each month until the balance from the prepetition retainer agreement is paid off.

72. Wheeler is a below-median income debtor and his Schedules reflect that he is unmarried and that he earns about $53,000 per year as a handyman. Wheeler's Schedule J reflects that he has a 2-year-old dependent child and has a monthly net income of a *negative* $96.07 per month.

73. Therefore, Wheeler has no excess income and the $200 per month that Geraci Law is electronically withdrawing from his bank account imposes an undue burden.

74. Wheeler's Schedule A/B reflects no real estate or other assets of any significant value.

75. The automatic stay was imposed as a matter of law on the petition date and remains in effect.

76. This case is currently pending.

### C. *Johnnie Mae Groce* (20-19354)

77. Johnnie Mae Groce ("*Groce*") filed a petition under chapter 7 of title 11 of the United States Code in the U. S. Bankruptcy Court for the Northern District of Illinois on October 28, 2020, thereby initiating the case *In re Groce,* (20-19354).

78. On February 28, 2020, Groce executed a retainer agreement for Geraci Law to represent her "in a Chapter 7 Bankruptcy until case closing" (*i.e.* to perform all customary pre and post-petition work).

79. A true and correct copy of that prepetition retainer agreement is attached as **Exhibit E**.

80. Under the prepetition retainer agreement, the fee for the entire case (including the filing fee) was $2,600. The retainer agreement required Groce to pay $1,000 before the petition was filed leaving $1,600 due post-petition.

81. The prepetition retainer agreement provides that "[a] separate agreement may be required in order to create any obligation to pay us for services and costs after filing… The Bankruptcy Code allows you to pay us voluntarily [under § 524(f)], but we prefer a written agreement so there are no misunderstandings."

82.   It appears that prior to filing the petition Groce paid $1,100, instead of the $1,000 required to retain Geraci Law for the entire case.

83.   The day after the petition was filed, Groce executed a post-petition agreement which expressly provides that it "is not a new contract for services" but is instead an agreement to pay for "all post-petition services we agreed in your [prepetition] retainer to perform through case closing[.]" It further provides that the "[b]alance to voluntarily agree to pay for the rest of the work" is the balance unpaid under the prepetition retainer agreement.

84.   A true and correct copy of that post-petition agreement is attached as **Exhibit F**.

85.   Along with the post-petition agreement Geraci Law filed a supplemental 2016(b) statement providing that the $100 above the $1,000 required to be paid prepetition to retain Geraci Law for the entire case was for "Post Case-Filing Work Pre-Paid."

86.   The post-petition agreement then authorizes Geraci Law to make ACH auto-debits from Groce's bank account in the amount of $100 on the 23rd of each month until the balance from the prepetition retainer agreement is paid off.

87.   Groce is a below-median income debtor and her Schedules reflect that she is unmarried, and her only income is her social security and pension. Groce's Schedule J reflects that she has a monthly net income of $87.18 per month.

88.   Therefore, Groce does not have the excess income to pay the entire $100 per month that Geraci Law is electronically withdrawing from his bank account. The post-petition agreement therefore imposes an undue burden.

89.   The automatic stay was imposed as a matter of law on the petition date and remains in effect.

90.   This case is currently pending.

**D. *Dwayne Morris Ridgner* (20-19431)**

91.   Dwayne Morris Ridgner ("*Ridgner*") filed a petition under chapter 7 of title 11 of the United States Code in the U. S. Bankruptcy Court for the Northern District of Illinois on October 29, 2020, thereby initiating the case *In re Ridgner,* (20-19431).

92.   On January 29, 2020, Ridgner executed a retainer agreement for Geraci Law to represent him "in a Chapter 7 Bankruptcy until case closing" (*i.e.* to perform all customary pre and post-petition work).

93.   A true and correct copy of that prepetition retainer agreement is attached as **Exhibit G**.

94.   Under the prepetition retainer agreement, the fee for the entire case (including the filing fee) was $2,335. The retainer agreement required Ridgner to pay $1,000 before the petition was filed leaving $1,335 due post-petition.

95.   The prepetition retainer agreement provides that "[a] separate agreement may be required in order to create any obligation to pay us for services and costs after filing… The Bankruptcy Code allows you to pay us voluntarily [under § 524(f)], but we prefer a written agreement so there are no misunderstandings."

— 16 —

96.   It appears that prior to filing the petition Payne paid $1,125, instead of the $1,000 required to retain Geraci Law for the entire case.

97.   One the same day the petition was filed, Ridgner executed a post-petition agreement which expressly provides that it "is not a new contract for services" but is instead an agreement to pay for "all post-petition services we agreed in your [prepetition] retainer to perform through case closing[.]" It further provides that the "[b]alance to voluntarily agree to pay for the rest of the work" is the balance unpaid under the prepetition retainer agreement.

98.   A true and correct copy of that post-petition agreement is attached as **Exhibit H**.

99.   Along with the post-petition agreement Geraci Law filed a supplemental 2016(b) statement providing that the $125 above the $1,000 required to be paid prepetition to retain Geraci Law for the entire case was for "Post Case-Filing Work Pre-Paid."

100. The post-petition agreement then authorizes Geraci Law to make ACH auto-debits from Ridgner's bank account in the amount of $75 every other Friday until the balance from the prepetition retainer agreement is paid off.

101. Ridgner is a below-median income debtor and his Schedules reflect that he is unmarried and that he is unemployed. Ridgner's Schedule J reflects that he has two very young children as dependents and has a monthly net income of a *negative* $75.78 per month.

102. Therefore, Ridgner has no excess income and the $75 every other week that Geraci Law is electronically withdrawing from his bank account imposes an undue burden.

103. Ridgner's Schedule A/B reflects no real estate or other assets of any significant value.

104. The automatic stay was imposed as a matter of law on the petition date and remains in effect.

105. This case is currently pending.

**E. *Mary A. Austin* (20-19047)**

106. Mary A. Austin ("*Austin*") filed a petition under chapter 7 of title 11 of the United States Code in the U. S. Bankruptcy Court for the Northern District of Illinois on October 21, 2020, thereby initiating the case *In re Austin,* (20-19047).

107. On September 17, 2020, Austin executed a retainer agreement for Geraci Law to represent her "in a Chapter 7 Bankruptcy until case closing" (*i.e.* to perform all customary pre and post-petition work).

108. A true and correct copy of that prepetition retainer agreement is attached as **Exhibit I**.

109. Under the prepetition retainer agreement, the fee for the entire case (including the filing fee) was $2,335. The retainer agreement required Austin to pay $1,000 before the petition was filed leaving $1,335 due post-petition.

110. The prepetition retainer agreement provides that "[a] separate agreement may be required in order to create any obligation to pay us for services and costs after

filing... The Bankruptcy Code allows you to pay us voluntarily [under § 524(f)], but we prefer a written agreement so there are no misunderstandings."

111. It appears that prior to filing the petition Austin paid $1,500, instead of the $1,000 required to retain Geraci Law for the entire case

112. A few days after the petition was filed, Austin executed a post-petition agreement which expressly provides that it "is not a new contract for services" but is instead an agreement to pay for "all post-petition services we agreed in your [prepetition] retainer to perform through case closing[.]" It further provides that the "[b]alance to voluntarily agree to pay for the rest of the work" is the balance unpaid under the prepetition retainer agreement.

113. A true and correct copy of that post-petition agreement is attached as **Exhibit J**.

114. Along with the post-petition agreement Geraci Law filed a supplemental 2016(b) statement providing that the $500 above the $1,000 required to be paid prepetition to retain Geraci Law for the entire case was for "Post Case-Filing Work Pre-Paid."

115. The post-petition agreement then authorizes Geraci Law to make ACH auto-debits from Austin's bank account in the amount of $500 on the 19th of each month until the balance from the prepetition retainer agreement is paid off.

116. Austin is a below-median income debtor and her Schedules reflect that she is unmarried and that she is retired. Austin's only source of income shown on Schedule

I is $1,761 per month from social security. Schedule J reflects that she has a monthly net income of $126 per month after claiming minimal expenses.

117. Therefore, Austin does not have the entire $500 per month in excess income that Geraci Law is electronically withdrawing from her bank account. The post-petition agreement imposes an undue burden.

118. Austin's Schedule A/B reflects no real estate or other assets of any significant value.

119. The automatic stay was imposed as a matter of law on the petition date and remains in effect.

120. This case is currently pending.

### F. *John Paul Brust and Jennifer Ann Brust* (20-12304)

121. John Paul Brust and Jennifer Ann Brust (the "*Brusts*") filed a petition under chapter 7 of title 11 of the United States Code in the U. S. Bankruptcy Court for the Northern District of Illinois on June 11, 2020, thereby initiating the case *In re Brust,* (20-12304).

122. On March 9, 2020, the Bursts executed a retainer agreement for Geraci Law to represent them "in a Chapter 7 Bankruptcy until case closing" (*i.e.* to perform all customary pre and post-petition work).

123. A true and correct copy of that prepetition retainer agreement is attached as **Exhibit K**.

124. Under the prepetition retainer agreement, the fee for the entire case (including the filing fee) was $2,835. The retainer agreement required the Brusts to pay $1,250 before the petition was filed leaving $1,585 due post-petition.

125. The prepetition retainer agreement provides that "[a] separate agreement may be required in order to create any obligation to pay us for services and costs after filing… The Bankruptcy Code allows you to pay us voluntarily [under § 524(f)], but we prefer a written agreement so there are no misunderstandings."

126. It appears that prior to filing the petition the Brusts paid $1,625, instead of the $1,250 required to retain Geraci Law for the entire case.

127. On the day after the petition was filed, Mr. Brust executed a post-petition agreement which expressly provides that it "is not a new contract for services" but is instead an agreement to pay for "all post-petition services we agreed in your [prepetition] retainer to perform through case closing[.]" It further provides that the "[b]alance to voluntarily agree to pay for the rest of the work" is the balance unpaid under the prepetition retainer agreement.

128. A true and correct copy of that post-petition agreement is attached as **Exhibit L**.

129. Along with the post-petition agreement Geraci Law filed a supplemental 2016(b) statement providing that the $375 above the $1,250 required to be paid prepetition to retain Geraci Law for the entire case was for "Post Case-Filing Work Pre-Paid."

130. The post-petition agreement then authorizes Geraci Law to make ACH auto-debits from Mr. Brust's bank account in the amount of $125 every other Friday until the balance from the prepetition retainer agreement is paid off.

131. The Brusts are below-median income debtors and their Schedules reflect that that they have 4 dependents and only Mr. Brust is employed. Schedule J reflects that the Brusts have a monthly net income of negative $268 per month.

132. Therefore, the Brusts do not have any excess income each month and the $125 every other Friday that Geraci Law is electronically withdrawing from their bank account imposes an undue burden.

133. The automatic stay was imposed as a matter of law on the petition date and remained in effect until the discharge was entered on September 9, 2020. The discharge injunction took the place of the automatic stay on that date.

### G. Geraci Law Explains its Payment Scheme to the U.S. Trustee

134. On June 26, 2020, the U.S. Trustee's Office emailed counsel at Geraci Law inquiring about Geraci Law's chapter 7 payment scheme and apparent violation of *Bethea* and the Bankruptcy Code.

135. A true and correct copy of that email is attached as **Exhibit M**.

136. In the email, the U.S. Trustee asked questions regarding Geraci Law's payment scheme, including: (a) why the pre-payment of post-petition fees held by Geraci Law on the petition date do not become property of the estate upon filing, and (b) what the post-petition agreements means when they say it "is not a new contract for services[.]"

137. On June 30, 2020, the U.S. Trustee received a response letter via email from Mr. Geraci.

138. A true and correct copy of the June 30, 2020 letter from Mr. Geraci is attached as **Exhibit N**.

139. Mr. Geraci stated that the amount for "Post Case-Filing Work Pre-Paid" is an advance payment retainer and thus earned on receipt. He then offered the commentary that "payments becoming property of the attorney, may indeed be difficult for the average lawyer to comprehend."

140. Mr. Geraci quoted the ARDC handbook on advance payment retainers which provides that "[i]n contrast to the security retainer, the funds paid to the lawyer under this retainer are intended by the client to be present payment to the lawyer in *exchange for the commitment to provided legal services in the future*…" (emphasis added).

141. The prepetition retainer agreements and post-petition agreements both contradict the assertion that the amounts paid beyond the amount required to be paid prepetition are advance payment retainers. Both agreements provide that any amounts paid beyond the amount required to file the case are not in exchange for the commitment from Geraci Law to provide any legal services in the future at all. Geraci Law will provide the exact same services whether they are paid or not. Thus, amounts paid above and beyond the prepetition minimum are not advance payment retainers because they are not made to retain any legal services. In short, they are not retainers at all.

142. With respect to what the post-petition agreements mean when they say they are "not a new contract for services," Mr. Geraci responded that it "is simply a contract to pay for services we intend to perform whether or not we are paid…Even though the U.S. Courts website and the Code are very clear, your office, the UST, and the Courts ignore the code."

143. Mr. Geraci then quoted the website from the U.S. Courts, which provided:

**May the debtor pay a discharged debt after the bankruptcy case has been concluded?**

A debtor who has received a discharge may voluntarily repay any discharged debt. A debtor may repay a discharged debt even though it can no longer be legally enforced. Sometimes a debtor agrees to repay a debt because it is owed to a family member or because it represents an obligation to an individual for whom the debtor's reputation is important, such as a family doctor.

144. Mr. Geraci then states that "of course, you are familiar with *11 U.S.C. § 524(f): Noting contained in subsection (c) of (d) of this section prevents a debtor from voluntarily repaying any debts.*" (emphasis in original).

145. Therefore, Mr. Geraci conceded that Geraci Law does not structure its post-petition agreements as post-petition contracts to "hire and pay" for post-petition services as envisioned by *Bethea*.

146. Rather, Geraci Law contracts prepetition to provide all services in the entire case and provides the total cost in that prepetition retainer agreement. The post-petition agreements are merely agreements to extract the unpaid balance from the prepetition retainer agreements by allowing Geraci Law to automatically reach into its client's bank accounts each month (or week) and electronically withdraw funds.

## COUNT I – DISGORGEMENT OF ALL POST-PETITION FEES
### (11 U.S.C. §§ 105, 362(a) AND 524(a))

147. The U.S. Trustee realleges and incorporates herein the allegations contained in all other paragraphs of this Complaint.

148. The Defendants employ a payment scheme that uses only a single prepetition retention agreement to provide all pre- and post-petition legal services. Any attempt to collect on that agreement during the case is a violation of the stay and efforts to collect on it after the discharge violates the discharge injunction.

149. The prepetition retention agreements contain all required elements to engage Geraci Law for all pre- and post-petition work. It expressly provides in its first line: "I retain Geraci Law L.L.C. to represent me in a Chapter 7 Bankruptcy *until case closing* on the terms below." (emphasis added).

150. The prepetition retention agreement provides a flat fee to engage Geraci Law through the end of the case, which is usually about $2,500, but only a prepetition amount, usually about $1,250, is required to be paid prepetition.

151. The prepetition retention agreement provides that there will be a remaining balance, usually about $1,250, when the petition is filed, and that Geraci Law will ask the client to pay that amount after the petition date.

152. Therefore, prepetition engagement agreement is a prepetition contract that creates a prepetition claim for the amounts that Geraci Law is attempting to collect post-petition.

153. Under 11 U.S.C. § 362(a)(6), the filing of a petition operates as a stay against all entities (including attorneys), of any act to collect, assess, or recover a claim

against the debtor that arose before the commencement of the case. *See* 11 U.S.C. § 362(a)(6).

154. After the discharge is entered, § 524(a) provides an injunction against any act to collect a prepetition balance on a discharged debt, whether or not the discharge of such debt is waived. *See* 11 U.S.C. § 524(a)(2). The injunction operates to prohibit any act to collect whether by letter, phone call, personal request, or any other means. *See* 4 Collier on Bankruptcy P 524.02 (16th 2020).

155. Working together §§ 362(a)(6) and 524(a)(2) prohibit creditors from even asking a debtor to pay a prepetition balance while the case is pending unless that request is to the debtor's attorney and seeks a reaffirmation agreement under the strict requirements provided in 11 U.S.C. § 524(c). After discharge, the injunction equally prohibits those creditors from asking a debtor for payment of a discharged debt, unless a reaffirmation agreement was executed, filed, and approved under 11 U.S.C. § 524(c) before the discharge was entered.

156. As a matter of practice, Geraci Law requests, encourages, or prompts its clients to sign a post-petition agreement to extract the balance due from the prepetition retention agreement. Geraci Law then institutes electronic ACH auto-debits that pull money out of the clients' bank accounts on a set schedule.

157. Geraci Law's payment scheme is an attempt to collect on a prepetition claim in violation of the stay during the case and in violation of the discharge injunction after discharge is entered.

158. Any payments that Geraci Law collected after the petition date must be disgorged. *See Bethea*, 352 F.3d at 1129.

159. Here, Geraci Law has violated the automatic stay by collecting debts during the bankruptcy cases, including in all of the identified cases above.

160. Here, Geraci Law has also violated the discharge injunction by collecting discharged sums after discharges were entered, including in *In re Brust*.

161. Thus, Geraci Law should be required to disgorge all post-petition funds it received from the debtors identified in this Complaint, as well as all funds received from any debtor using the described payment scheme in the past 2 years under §§ 105(a), 362(a) and 524(a).

**WHEREFORE**, the U.S. Trustee respectfully asks the Court to enter a judgment in his favor and against the Defendants finding that they violated the automatic stay and discharge injunction and:

A.   Ordering the post-petition agreements void and requiring the Defendants to disgorge all sums collected post-petition from the underlying Debtors in these cases, and all other debtors where the payment scheme described herein was employed within the past 2 years under §§ 105(a), 362(a), and 524(a); and,

B.   Granting any further relief that the Court deems just and proper.

## COUNT II – DISGORGEMENT OF ALL POST-PETITION FEES
### (11 U.S.C. §§ 105 AND 524(c), (d))

162. The U.S. Trustee realleges and incorporates herein the allegations contained in all other paragraphs of this Complaint.

163. The Defendants' payment scheme circumvents the protections provided by § 524(c) and (d).

164. A reaffirmation agreement is any post-petition agreement to pay a dischargeable debt. *See* 11 U.S.C. § 524(c). Attorneys' fees and expenses under prepetition engagement agreements are dischargeable in bankruptcy. *See Bethea,* 352 F.3d at 1129.

165. Geraci Law's post-petition agreements are not agreements to provide post-petition legal services and to pay for those services. Rather they are solely agreements for the debtors to pay Geraci Law the balance from the prepetition retention agreements.

166. The post-petition agreements are reaffirmation agreements.

167. Section 524(f) does not alleviate the need to follow the strict reaffirmation agreement requirement in § 524(c) and (d).

168. Section 524(f) uses the word "voluntary" in the "objective sense as referring to repayment that is free from creditor influence or inducement." *Hudson v. Cent. Bank (In re Hudson)*, 168 B.R. 368, 372 (Bankr. S.D. Ill. 1994). Section 524 "invalidates repayment that is induced in any manner by the act of a creditor." *Id.*

169. Again, Geraci Law induces its own clients to execute the post-petition agreements to pay its debt that would otherwise be discharged. Its clients have no obligation to pay any post-petition amounts to Geraci Law, but Geraci Law solicits the post-petition agreements, and employs auto-debits to ensure those payments are made.

170. Section 524(f) does not protect this behavior.

171. Further, § 524(d) provides that when an individual wants to reaffirm a debt, the Court may hold a hearing to inform the debtor that the agreement is not required and the related legal consequences. *See* 11 U.S.C. § 524(d). But when a debtor is not represented by an attorney in negotiating the reaffirmation agreement the Code requires the Court to hold such a hearing before the reaffirmation agreement is approved. *See id.*

172. Geraci Law cannot represent its own clients in negotiating a reaffirmation agreement against itself. That would be an impermissible conflict of interest. Geraci Law's clients are left unrepresented in those negotiations against their own attorneys.

173. On information and belief, the vast majority of Geraci Law's clients that are prompted to sign a post-petition agreement do sign that agreement.

174. Any post-petition agreement to pay a creditor that violates the automatic stay, or the discharge injunction is void and unenforceable.

175. Additionally, any reaffirmation agreement that does not meet the requirements of § 524(c) and (d) is void and unenforceable.

176. Finally, 11 U.S.C. § 105(a) provides the Court with the power to issue an order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code, including §§ 362 and 524.

177. The Court has the inherent power and the power under 11 U.S.C. § 105(a) to enforce the automatic stay and the discharge injunction. The same is true to enforce the requirements of 11 U.S.C. § 524(c) and (d).

**WHEREFORE**, the U.S. Trustee respectfully asks the Court to enter a judgment in his favor and against the Defendants finding that they have violated the reaffirmation requirements found in the Code and:

A.    Ordering the post-petition agreements void and requiring the Defendants to disgorge all sums collected post-petition from the underlying Debtors in these cases, and all other debtors where the payment scheme described herein was employed within the past 2 years under §§ 105(a) and 524(c), (d); and,

B.    Granting any further relief that the Court deems just and proper.

## COUNT III – DISGORGEMENT OF ALL POST-PETITION FEES
### (11 U.S.C. §§ 329)

178. The U.S. Trustee realleges and incorporates herein the allegations contained in all other paragraphs of this Complaint.

179. Section 329(b) states that any compensation provided to a debtor's attorney during a case that exceeds the value of the services provided in exchange should be disgorged. That section provides in pertinent part:

> If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive.

11 U.S.C. § 329(b).

180. Geraci Law's payment scheme, as employed in the Debtors' cases, and in many others, provides that it will represent its clients for the entire case for a set pre-

filing amount. Therefore, the post-petition agreements, and the payments that Geraci Law extracts from its clients' bank accounts post-petition, are not paid in exchange for any services.

181. Because no services support the post-petition agreements and payments thereunder, the debtors received no value in exchange for those payments.

182. Without any value provided by Geraci Law in exchange for the payments, the payments must be disgorged entirely to the Debtors. Additionally, the post-petition agreements should also be canceled as being unsupported by any services provided by Geraci Law.

**WHEREFORE**, the U.S. Trustee respectfully asks the Court to enter a judgment in his favor and against the Defendants finding that no value is provided in exchange for the post-petition agreements and payments and:

A.   Ordering the Defendants to disgorge all sums collected post-petition from the underlying Debtors in these cases, and all other debtors where the payment scheme described herein was employed within the past 2 years under § 329(b); and,

B.   Granting any further relief that the Court deems just and proper.

## COUNT IV – INJUNCTION AGAINST FURTHER VIOLATIONS
### (11 U.S.C. §§ 105, 362 AND 524)

183. The U.S. Trustee realleges and incorporates herein the allegations contained in all other paragraphs of this Complaint.

184. Pursuant to 11 U.S.C. § 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

185. Geraci Law has been, and continued to be, engaged in continuous and systematic violations of the automatic stay, the discharge injunction, and reaffirmation requirements, a total and express prohibition of which is required.

186. In order to ensure these continuous and systematic violations are stopped, the U.S. Trustee requests that this Court enter a permanent injunction enjoining the Defendants from continuing to use this payment scheme and retaining jurisdiction to sanction the Defendants if they persist and violate the injunction.

**WHEREFORE**, the U.S. Trustee respectfully asks the Court to enter a judgment in his favor and against the Defendants finding that they have continuously and systematically violated §§ 362(a), 524(a), (c), and (d) and:

A.    Enjoining the Defendants from employing the payment scheme described in this Complaint;

B.    Retaining jurisdiction to enforce the injunction; and,

C.    Granting any further relief that the Court deems just and proper.

Dated:                                    Respectfully Submitted:

                                         **PATRICK S. LAYNG**,
                                         **UNITED STATES TRUSTEE**,

                                         By: /s/ David Paul Holtkamp
                                         David Paul Holtkamp, Trial Attorney
                                         Adam G. Brief, Assistant U.S. Trustee
                                         U.S. Department of Justice
                                         Office of the United States Trustee
                                         219 S. Dearborn, Room 873
                                         Chicago, Illinois 60604
                                         Main: (312) 353-5014
                                         Cell:  (202) 567-1489